## Methodist Episcopal Church South et al. v.
## W. R. Clifton et al.

### Decided January 12, 1904.

**1.—Church—Unincorporated Voluntary Association—Judgment.**

An unincorporated voluntary church association can not be subjected to an ordinary judgment for debt.

**2.—Same—Equitable Lien.**

Agents of an unincorporated society of the Methodist Episcopal Church South who, under appointment from the Conference, contracted debts in acquiring property for a denominational school could not establish an equitable lien, for their indemnification, against church buildings, other school buildings or other property held by trustees and acquired through voluntary subscriptions made by members of the denomination for specific religious, educational or charitable purposes not connected with the undertaking in which the debt was incurred.

**3.—Same.**

Where the property and funds of the church were all subscribed and held for specific, and not for its general purposes, and the specific property for acquiring which the debt had been contracted by plaintiffs for the benefit of the unincorporated church association had been sold for other debts against it, plaintiffs were not entitled to a judgment against the association on the theory that it might in the future acquire general funds or property against which they might be entitled to a lien for their debt.

Appeal from the District Court of McLennan. Tried below before Hon. Sam R. Scott.

Clifton and others brought suit against the Methodist Episcopal Church South, and others, and obtained judgment from which this appeal was prosecuted.

*Boynton & Boynton,* for appellants.

*Clark & Bolinger* and *Geo. W. Barcus,* for appellees.

STREETMAN, Associate Justice.—W. R. Clifton, D. R. Gurney, Mrs. S. A. Bell, as independent executrix of the estate of J. D. Bell, deceased, Eugene Williams and Bart Moore brought this suit against Methodist Episcopal Church South, a voluntary association, whose membership is too numerous to be herein sued; Granbury College, a voluntary association, of which John Hanley, John D. Baker, and D. L. Nutt are trustees, its members and trustees being too numerous to be herein sued; Clarendon College, Weatherford College, Polytechnic College, and Southwestern University, duly incorporated corporations, and M. S. Hotchkiss, J. R. Nelson, B. R. Bolton, W. D. Jackson and T. P. Sparks, as members of said church.

Plaintiffs alleged that certain individuals named in the petition were members and local agents representing said corporations and associations in various counties named, and were representative members of said church and said Granbury College as voluntary associations, and hold

title to the property therein described as members and trustees of said voluntary associations.

Plaintiffs alleged that in November, 1888, said church acting by Northwest Texas Conference, composed of the persons named in the petition and others, duly authorized by said church, appointed plaintiffs trustees of the Waco Female College, and authorized plaintiffs, with others, as general agents of defendants, to build a new college building in or near Waco, Texas, for the Waco Female College.

That by virtue of said authority, plaintiffs undertook the work of erecting said building, and in conducting the same, being authorized so to do by said church and its codefendants, on or about April 1, 1899, contracted indebtedness aggregating $17,500; this indebtedness being represented by promissory notes signed by plaintiffs, payable to various banks and persons and bearing interest at 10 per cent per annum.

That the money, labor and materials received for said notes were devoted to the erection of the new college building. That said building was accepted by said defendants as the property of said church, and said defendants, with full knowledge of all the facts, including said indebtedness, ratified and confirmed all the acts of the plaintiffs in the erection of said new building, and the contracting of said indebtedness.

That in all matters relating to said debt plaintiffs were sureties and defendants were principals. That said indebtedness was, from time to time, extended by giving renewal notes, remaining the debt of defendants, until about January 1, 1900, at and before which time judgments were obtained on notes given therefor by the plaintiffs, and said creditors now look alone to plaintiffs. That thereby said church and its codefendants, as members of the church and holding its assets, became bound to pay plaintiffs $17,500, with 10 per cent per annum interest from April 1, 1899, that being the amount so assumed and paid by plaintiffs to said creditors.

Plaintiffs further allege that said church and its codefendants for more than fifteen years have been engaged in religious and educational work, accumulating money and property for such purposes, and said corporations and associations have acquired the following real estate. (Then follows a description of certain lots and tracts in McLennan County and the campus properties of the various educational institutions made defendants.) Said real estate is alleged to be of the reasonable market value of $200,000.

Plaintiffs further alleged that all of said property has been acquired for the use and benefit of said church and is held by the codefendants of said church solely for its use and benefit, the equitable and beneficial title being vested in said church as a voluntary association. That said total property of said church aggregates more than $1,000,000, and that plaintiffs have from time to time made donations to said church of money, time and labor, and in said new college enterprise, as agents of said church by appointment of Northwest Texas Conference, secured a campus and building of the reasonable value of $105,000, charged

with a debt of $30,000, in addition to the debt herein sued upon, and said defendants failed and refused to assist in discharging same and allowed said property to be lost to said church under execution sale and without fault upon the part of plaintiffs.

That said church holds no property in its own name, and all the property of the church is held by corporations or boards of trustees for its use. That for a valuable consideration, all members of said church have agreed that all obligations contracted by its agents in good faith for its use and benefit shall be discharged by the church, and thereby all the property of said church is charged with an equitable lien for the payment of the debt sued on, and that there is no adequate remedy at law.

Plaintiffs pray for judgment against said church and said corporations, associations and individuals as members of said church, and that said judgment be charged as a lien on said described real estate, and for foreclosure and order of sale and execution against the church to be levied on any property held for its use and benefit or owned by said church, and for general and special relief.

The petition of appellees might be construed as an effort to obtain a simple judgment against the Methodist Episcopal Church South, and the judgment rendered, in some respects, can hardly be distinguished from an ordinary judgment at law for debt; but appellees in their brief state that they sued in equity to charge upon the property of appellants the indebtedness incurred by them as agents of the church in its educational extension work.

The answer of appellants was, in our opinion, sufficient to raise the questions discussed in this opinion.

Special issues were submitted to the jury, and upon their answers thereto a judgment was rendered. After setting out the special issues and the answers of the jury, the judgment recites, that it appears that W. R. Clifford, Bart Moore, D. R. Gurley, J. D. Bell and Eugene Williams were, previous to 1890, appointed by the Methodist Episcopal Church South its agents, with power and authority to erect a new building for one of its educational institutions, then known as the Waco Female College, and that in performing the work of erecting such building, said agents borrowed and advanced during said year the sum of $17,300, and continuously since have paid or been held personally responsible for interest thereon, aggregating the further sum of $20,489.72; that after borrowing the amount, the same was expended in erecting and completing said building; that in 1892 said church, through the Northwest Texas Conference, was notified that said agents had created an indebtedness, of which the amount so borrowed and expended by said agents was a part, and after such notice ratified the acts of said agents in creating said indebtedness, and claimed said building to be the property of said church, and thereby became responsible to plaintiffs for said amount and interest, and it being expressly adjudicated, as against all parties to the suit, that said church is a voluntary

association, and that a sufficient number of its members have been made parties and have answered for its protection, and that the titles to the properties described herein in the plaintiffs' petition are held in trust by the respective trustees in whom said titles are vested, for the use and benefit of said church, and that said church owns the equitable titles thereto, and said titles and said properties are subject to execution for the payment of said indebtedness, said properties being described as follows: (Then follows a particular description of two parcels of land in Waco, Texas, one of which the judgment says is the "New Austin Street Methodist Church property," and the other "the church and parsonage, being the Fifth Street Methodist Church property.")

Then the judgment continues as follows: "And it further appearing to the court that the plaintiffs are entitled to their debt and interest, as damages, aggregating thirty-seven thousand seven hundred and eighty-nine and 72-100 ($37,789.72) dollars, together with issuance of execution therefor to be levied upon the property of said church, within the jurisdiction of the Northwest Texas Conference of said church, excepting therefrom the following described property, to wit: (Here follows description of real estate belonging to Granbury, Weatherford, Polytechnic and Clarendon colleges and Southwestern University.)

"Now, therefore, it is ordered, adjudged and decreed by the court that the plaintiffs, W. R. Clifton, Bart Moore, D. R. Gurley, Eugene Williams, Mrs. S. A. Bell, legal representative of the estate of J. D. Bell, deceased, do have and recover of and from the Methodist Episcopal Church South, the board of trustees of Waco Female College, a duly incorporated corporation, and of J. R. Nelson, R. O. Rounsavall, L. B. Black, Sam P. Wright, W. D. Jackson, H. A. Borland, G. W. Wyatt, John Hanley, John D. Baker, D. L. Nutt, M. S. Hotchkiss, B. R. Bolton, W. D. Jackson, T. P. Sparks, J. D. Stocking, C. A. Burton, T. J. Nolan, I. W. Stephens, R. W. Kindel, W. H. Edleman, R. C. Armstrong, J. B. Baker, George Mulkey, Joseph S. Key, J. W. Hodges, J. W. Snyder, as being constituent members in law of said voluntary association Methodist Episcopal Church South (but not against them as individuals), the sum of thirty-seven thousand seven hundred and eighty-nine and 71-100 ($37,-789.72) dollars, together with interest thereon at the rate of 6 per cent per annum from this date until paid, for which let execution issue, to be levied only upon any property of the said Methodist Episcopal Church South within the jurisdiction of the Northwest Texas Conference, and excepting therefrom the tracts of land hereinbefore excepted."

The Methodist Episcopal Church South has appealed, and in its brief presents a number of assignments, contending among other things that the indebtedness of plaintiffs was incurred without its authority and in violation of its instructions, denying that the Northwest Texas Conference ratified the transactions by which the indebtedness was incurred, or that it had authority to do so. Two questions, however, are presented which control the disposition of the case, and render unnecessary a consideration of other assignments: (1) Whether the appellant was such

person in law as could be subjected to an ordinary judgment for debt; and, (2) if not, did appellees show themselves entitled in equity to subject any property of appellant to any character of trust or lien for their benefit?

As we have stated above, it is not clear whether appellees insist that they were entitled to a judgment for debt against appellant, or only to relief in equity by the enforcement of an equitable lien, but the judgment rendered seems to, proceed upon both theories, first establishing a lien upon certain property, and then awarding judgment as for an ordinary debt, with execution accordingly. It is therefore necessary to decide both questions.

The petition simply alleges that appellant is a voluntary association, and a number of persons are made defendants, not as individuals, but as constituent members of said association, upon the theory that the entire membership is too numerous to be made parties. It is not sought to be held as a partnership, nor a corporation, and no personal liability is claimed against its members.

It is well established that such an association can not be sued, and a personal judgment rendered against it. As said by Chief Justice Garrett in Burton v. Grand Rapids School Furniture Co., 31 S. W. Rep., 91: "There was an evident attempt to sue the church as an organization, which, as it was an unincorporated association, could not be done (citing Turnstall v. Wormley, 54 Texas, 476; Devoss v. Tray, 22 Ohio St., 168; Wilkins v .Wardens, etc., 52 Ga., 352; Ash v. Guie, 97 Pa. St., 498). An unincorporated association is no person, and has not the power to sue or be sued. When such an association has been organized and is conducted for profit, it will be treated as a partnership, and its members will be held liable as partners. But in the case of religious and eleemosynary associations, the members and managing committees who incur the liability, assent to it or subsequently ratify it, become personally liable."

The authorities cited, as well as many others which we have examined, fully justify the conclusions above quoted. Bates on Partnership, sec. 75; McCabe v. Goodfellow (N. Y.), 30 N. E. Rep., 728; Reding v. Anderson (Iowa), 34 N. W. Rep., 300; Clarke v. O'Rourke (Mich.), 69 N. W. Rep., 147; In re St. James Club, 2 De Gex, M. & G., 383.

We conclude that no judgment could be properly rendered against the Methodist Episcopal Church, as such, unless for the purpose of enforcing some equitable right which plaintiffs had against some property held by that association.

Many authorities are cited by appellees involving actions against unincorporated associations and their members, and to which we have given careful examination and consideration. They will be found to fall clearly within one of three classes:

, 1. Cases in which the association has been found to be a joint stock association, and in which it or its members have been held liable on the theory of partnership. Of this class are Gorman v. Russell, 14 Cal.,

531; Industrial Lumber Co. v. Texas Pine Land Assn., 72 S. W. Rep., 875.

2. Cases in which individual members have been held liable, either in person or on the principle of agency for debts incurred by them for the benefit of such associations. Such are Ridgeley v. Dodson (Penn.), 3 Wat. & S., 118; Downing v. Mann, 3 E. D. Smith (N. Y.), 36.

3. Cases in which the plaintiffs have shown themselves entitled in equity to subject the general property or some particular property of such association to their claims by virtue of an equitable lien, or some species of trust. Of this character are the following: Society of Shakers v. Watson, 68 Fed. Rep., 730; Smith v. Swormstedt, 16 How. (U. S.), 302, 14 L. Ed., 942; Van Houten v. Pine, 36 N. J. Eq., 133.

In this case it is not claimed that there was a partnership. There are express findings by the jury that neither of the corporations or individuals sued as defendants, personally authorized or took any part in the creation of the debt sued upon. Clearly, therefore, this case is not of the first or second class above described.

It remains to be determined whether it is a case of the third class enumerated. The case of Van Houten v. Pine, 36 N. J. Eq., 133, was a suit against Pine as president, and Ingalls as secretary, and "twelve hundred other copartners, as the Masonic Mutual Life Insurance Company." The company was alleged to be a voluntary, friendly life insurance society, in which the members, according to the agreements contained in the constitution and by-laws, contributed by regular assessments to create the funds of the society, upon the mutual agreement and understanding that at their death a certain sum of money should be paid to their designated relatives. Van Houten was a member of this society, and upon his death his widow filed a bill in equity to compel the payment of the policy, to which a demurrer was filed for want of parties, and want of equity in the bill. In disposing of the latter ground of demurrer the court says: "The Masonic Mutual Life Insurance Company is not a corporation; it is a voluntary, friendly, life insurance society. Equity takes cognizance of the affairs of such associations, and grants relief by treating them as partnerships, or by looking into the scheme, and compelling conformity to it, or reforming it and enforcing it, or, if the plan is deemed impracticable, decreeing a dissolution and distributing the funds; and, speaking generally, it redresses, as far as it can, the grievances of the members of these societies who complain to it of injustice affecting their pecuniary interests therein. In the case in hand (though it is not stated in the bill to be so) the company, as appears by the copy of by-laws put in on their part on the argument, has a very large accumulated surplus fund, amounting to over $20,000. Apart from that admission and looking at the statements of the bill alone, it does not appear that the company has not a fund out of which the complainant may be paid. It is therefore unnecessary now to consider whether the court would, if there were no other means, order payment through an assessment on the members. It is

enough to say that it is not an absolute, certain and clear proposition that the bill would be dismissed for want of merits on the hearing."

The effect of this decision is that where such a voluntary association has a fund created for the purpose of paying certain death claims, the persons entitled thereto may sue a sufficient number of the members of such association and compel their claims to be paid out of such fund.

The case of Smith v. Swornstedt, above cited, grew out of division of 1844 of the Methodist Episcopal Church North and South. It appeared that the Methodist Book Concern, a corporation under the laws of Ohio, was, prior to said division, operated for the purpose, among others, of providing a charitable fund, known as the Book Concern, for the support of the traveling and worn-out preachers of said church. The bill was filed by the complainants for themselves and in behalf of the traveling and worn-out preachers in connection with the society of the Methodist Episcopal Church South in the United States, to recover a share of that fund. The court after holding that the separation was not an act of secession by the Southern church, but a voluntary division of the society, simply decides that the complainants, having shown themselves to be the beneficiaries for whom said fund was created, and not having forfeited their rights, were entitled in equity to have a division of said fund and to have their share set apart to them.

The basis of the suit in Society of Shakers v. Watson, 58 Fed. Rep., 730, was a promissory note, but in that case it was shown that the debt represented by the note was incurred by the regularly appointed trustees of the society, and that the money borrowed went to increase the funds of the society, and that the persons who furnished the money in this manner were entitled to an equitable lien upon the property thus increased.

The foregoing cases are recited and relied upon by appellees. Many others of similar import might be added, but the principle involved is the same. In every instance the complainants show themselves entitled to charge some property belonging to the association generally, or to some particular fund, either as beneficiaries or as holders of an equitable lien.

In this case, the pleadings and evidence show that the particular property belonging to the Waco Female College has been sold, and there is no effort to fix a lien upon that property. Other property is pointed out in the petition, which is sought to be subjected to a lien, as was done in the cases cited. With reference to this and all other property held for the use of appellant, the jury made the following special findings:

"22. Does the defendant, Methodist Episcopal Church South, accumulate property or hold any property for general purposes? Ans. They do not.

"23. Is the property used by the various branches or institutions of the Methodist Episcopal Church South denomination, contributed by voluntary donations for a definite, specific purpose? Ans. It was.

"24. Have Clarendon College, Granbury College, Polytechnic Col-

lege, Weatherford College and Southwestern University, or any two of them, any joint common financial interest, or has any one of said schools any control over the finances of any other school?   Ans.   No.

"25.   Did any of the schools mentioned in the preceding question have any connection with the creation of the debts sued upon, or any interest in the matters for which said money was expended?   Ans.   No.

"26.   Does the Northwest Texas Conference or the Methodist Episcopal Church South own any property, and if so, what property, and for what purpose or purposes is the same held?   Ans.   They own church and school property; purposes for school and churches.

"27.   How has the property held by local Methodist church associations been accumulated, by voluntary donations or otherwise?   Ans. Voluntary and solicited.

"28.   If the property last mentioned has been accumulated by voluntary donations, were said donations solicited and made for the use of the particular school or local church using the same, or were such donations made for general purposes?   Ans.   For specific purposes."

Upon these findings, the property of the other defendant colleges was excepted from the operation of the judgment, but the judgment virtually authorizes execution against the Austin Street Church property, and the Fifth Street Church property in the city of Waco.

In our opinion, the verdict of the jury makes it clear that the church now holds no property directly connected with the enterprise for which the indebtedness of appellees was incurred; that it holds no property as a general fund of the association, which might be charged in equity with this debt; but that all of the property controlled by it, or held for its use, is charged with particular charitable uses, separate and distinct from the Waco Female College, and which can not be lawfully diverted from the purposes for which it was donated.   Perry on Trusts, secs. 733, 734, and cases cited; 24 Am. and Eng. Enc. of Law, 2 ed., 352.

These conclusions compel us to answer in the negative both of the questions propounded in the beginning.   Appellant was not such a person as could be sued at law; and appellees not only failed to point out any property subject in equity to their claim, but on the contrary, the evidence and the verdict conclusively shows that no such property exists.   Appellees insist that the judgment should not be, for this reason, set aside, because appellant might in the future acquire property subject to their demand.   It is not clear to us how this could be possible, but if it were, the contention could only be sustained on the theory that the appellees were entitled to an ordinary judgment for their debt, with award of execution; but this we have decided they can not obtain.

We therefore conclude that neither at law nor in equity were appellees entitled to recover, and the judgment in their favor will therefore be reversed and judgment rendered in favor of appellant.

*Reversed and rendered.*

Writ of error refused April 28, 1904 (Clifton v. M. E. Church South).